## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| EXECUTIVE HOME CARE FRANCHISING, LLC, | Case No. |
| Plaintiff, | **VERIFIED COMPLAINT  FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| vs. | |
| MARSHALL HEALTH CORP. , WELL-BEING HOME CARE CORP., CLINT MARSHALL, an individual, MASSARE MARSHALL, an individual; and GREER MARSHALL, an individual, JOHN DOES 1-5, fictitious parties, | |
| Defendants. | |

Plaintiff Executive Home Care Franchising, LLC ("Executive Care" or "Plaintiff") by and through its attorneys, Marks & Klein, LLP, states by way of Verified Complaint for Declaratory and Injunctive Relief against Defendants Marshall Health, Corp. ("Marshall Health"), Well-Being Home Care, Corp. ("Well-Being"), Clint Marshall ("C. Marshall") Massaree Marshall ("M. Marshall") and Greer Marshall ("G. Marshall")(or, collectively, "Defendants"), as follows:

### NATURE OF THE ACTION

1.     This is an action between Plaintiff, a franchisor, and Defendants, its former franchisees, for declaratory relief pursuant to 28 U.S.C. §2201 as well as temporary restraints, preliminary and permanent injunctive relief, seeking to enforce the termination of the Defendants' Morristown, New Jersey Executive Care franchise location, and further enjoining Defendants from continuing to operate a competing in-home care business in direct violation of the in-term and post-termination obligations under the parties' Franchise Agreement.

1

2.    Defendants have, *inter alia*, committed multiple material breaches of their franchise agreement including (i) unilaterally terminated the agreement with eight (8) years remaining on their contract term, (ii) refusing to return confidential and proprietary information and customer lists to Executive Care, (iii) forming a new entity, Defendant Well-Being for the specific purpose of operating a competing in-home care business in violation of multiple restrictive covenants contained in the parties' Franchise Agreement and have otherwise conspired to injure the goodwill, brand strength and business reputation of Executive Care.

3.    Plaintiff seeks injunctive and equitable relief of termination of the parties' February 23, 2013 Franchise Agreement based upon (i) Defendants' unilateral abandonment of their Morristown, New Jersey franchise location; (ii) Defendants' violation of in-term and post termination restrictive covenants contained in the parties' Franchise Agreement; (iii) continuing trade dress infringement, and unfair competition arising from, among other things, Defendants' failure to comply with the standards of the operations manual, payment obligations in their Franchise Agreement; and, (iv) Defendants' unauthorized use of the Plaintiffs' trademarks, trade names and trade dress in operation of a competing business.

4.    Plaintiff specifically seeks a determination that Defendants should be temporarily restrained and enjoined from the following:

   a)  continuing to operate an Executive Care franchise location in Morristown, New Jersey, or anywhere else, due to the Marshall Defendants' breach of their payment obligations and the in-term and post-termination restrictive covenant contained in the Executive Care Franchise Agreement

   b)  operating a competing, "independent" in-home care business in violation of the express provisions of the parties' Franchise Agreement;

c)  further violating the fair and reasonable non-disclosure, non-competition and/or non-solicitation clauses in the Franchise Agreement and/or in the separate Non-Disclosure and Non-solicitation clauses in the Franchise Agreement and/or in the separate Non-Disclosure and Non-Compete Agreement executed by Defendants; and

d)  enjoining Defendants from improperly failing to return or otherwise using the clients, caregivers, charts, phone numbers, proprietary materials, trademarks, trade names, trade dress of Executive Care and from holding themselves out to the public as, and operating as Executive Care franchisees or any entity in any way affiliated with Executive Care in order to divert business from Executive Care to themselves.

## PARTIES

5.   Plaintiff Executive Home Care Franchising, LLC is a New Jersey limited liability company, formed in June 2012 with a principal place of business located at 270 State Street, Hackensack, New Jersey 07601.

6.   Plaintiff is engaged in the business of selling and granting franchises for the operation of outlets under the trademark EXECUTIVE CARE YOUR HOME CARE COMPANY™, for the purpose of operating an in-home care business (the "System").

7.   Defendant Marshall Health Corp is a corporation doing business in this district with a business address located at 301 E. Hanover Ave., Suite 6, Morristown, NJ 07960.

8.   Defendant Clint Marshall is a resident of the State of New Jersey with a current address located at 31 Cedar Lane, Hillsdale, NJ 07642.

9.   Defendant Massaree Marshall is a resident of the State of New Jersey with a current address of 31 Cedar Lane, Hillsdale, NJ 07642 and 114 Vorhees Street, Teaneck, NJ 07666.

10.     Defendant Greer Marshall is a resident of the State of New Jersey with a current address of 304 Liberty Road, Englewood, NJ 07631.

11.     Defendant Well-Being Home Care Corp. is an entity that was formed by C. Marshall. M. Marshall and B. Marshall to operate their in-home care business. Upon information and belief, this entity is being used by Defendants for the purpose of operating a competing in-home care business to compete directly against Plaintiff in violation of the parties' Franchise Agreement.

12.     John Does 1-5 are all additional parties, yet to be named who, upon information and belief, have and continue to assist Defendants in breaching the in-term and post-termination covenants and restrictions contained in their Franchise Agreement.

## JURISDICTION AND VENUE

13.     This Court has federal question jurisdiction over this matter pursuant to 15 U.S.C. §1221 and 28 U.S.C. §1338(a) and (b) based upon Defendants' alleged violations of the Lanham Trademark Act, 15 U.S.C. §1051, *et seq.*

14.     This Court also has personal and subject matter jurisdiction over each of the named Defendants since Plaintiff and all of the Defendants' businesses are operated in this District and all of the events giving rise to the allegations contained in the within Verified Complaint occurred in this District.

15.     Venue is properly laid in this District pursuant to 28 U.S.C. §1391(b) because both Plaintiff and all of the named Defendants did business in this District at the time of all of the complained of actions and continue to do business in this District.

16.     Jurisdiction and venue are also proper because Defendants C. Marshall, M. Marshall and D. Marshall expressly agreed by way of contract to the jurisdiction and venue of

the District Court of New Jersey pursuant to Section (§)11.2 (Governing Law, Venue and Jurisdiction) of their Franchise Agreement with Plaintiff. *See* Exhibit A, February 25, 2013 Franchise Agreement, §11.2.2.

17.   Furthermore, this Court may also exercise personal jurisdiction over the Defendants based upon Section 11.9 (Injunctive Remedy for Breach) of Defendants C. Marshall, M. Marshall and D. Marshall's Franchise Agreement, which provides that Plaintiff as franchisor "[h]as the exclusive right to seek relief pursuant to this section in a court of competent jurisdiction as defined in §11.2.2 of this Agreement or any other court of competent jurisdiction." *See* Exh. A., Section 11.9. Plaintiff seeks solely injunctive and equitable relief in this action.

## BACKGROUND FACTS

**A.   The Executive Care Franchise System and Brand**

18.   Executive Home Care Franchising, LLC is the franchisor of the EXECUTIVE CARE YOUR HOME CARE COMPANY™ franchise system.

19.   Executive Care is the owner of the trademark, service mark, and trade name EXECUTIVE CARE YOUR HOME CARE COMPANY™, "Executive Care" and related marks (the "Marks") Registration Numbers 4229224 and 4485670 since 2012. *See* Exhibit B, United States Patent and trademark Office ("USPTO") Record of Registration of Service Mark.

20.   Plaintiff has the exclusive license to use and license others to use the Marks and the trade name, Executive Care Your Home Care Company and has used the Marks continuously since approximately 2012 to identify Executive Care in-home care businesses.

21.   Plaintiff has obtained its Marks for use in connection with: Franchise services, namely, offering business management assistance in the establishment and operation of home

health care businesses; Franchising, namely, offering business management assistance in the establishment and/or operation of home health care businesses. *See* Exh. B.

22.    The Executive Care trademarks and trade name are distinctive and famous and have acquired secondary meaning.

23.    The Executive Care trademarks and trade name are utilized in interstate commerce.

24.    The Executive Care Marks have been very widely advertised and promoted by Executive Care over the years, specifically with regard to the sale of its services and the granting of rights to operate Executive Care franchised locations.

25.    To date, Executive Care and its franchisees have expended substantial monies in advertising and promoting the Executive Care Marks over the last several years.

26.    Executive Care and its franchisees currently operate several Executive Care locations throughout the New Jersey metro market.

27.    Executive Care has spent a considerable amount of time, effort and money to construct and continues to develop, use and control business methods, technical knowledge, marketing concepts, trade secrets, commercial ideas, advertising forms, distinctive signs, trade dress and uniforms, and employee training techniques that, taken together, make up a proprietary system for the operation of in-home care business.

28.    As a result of the extensive sales, advertising, and promotion of the Executive Care Marks, the in-home care industry and the general public in the various markets where Executive Care operates have come to know and recognize the Executive Care Marks, and to associate them exclusively with products and services offered by Executive Care and its

franchises. The Executive Care Marks are assets of inestimable value to Executive Care, representing and embodying Executive Care's considerable goodwill and favorable reputation.

**B.     Defendants' Obligations Under the Franchise Agreement and Covenants Not to Compete.**

29.     On February 23, 2013, Defendants C. Marshall, M. Marshall and B. Marshall entered into their Franchise Agreement with Plaintiff to operate an Executive Care in-home care business in Morristown, New Jersey ("Franchise Agreement" or Morristown Agreement").

30.     Defendants' franchise location opened for business in August 2013.

31.     While the individual defendants signed the franchise agreement, Defendants at all relevant times were doing business as "Executive Care".

32.     The Morristown Agreement contains acknowledgments and agreements by Defendants concerning the franchisees' duties under the agreements. For example the applicable paragraphs include, but are not limited to the obligation to promptly pay royalty fees to Plaintiff:

6.2.     Royalties

You shall pay Executive Care a continuing monthly royalty fee equal to five percent (5%) of Gross Revenue for up to the first $2,000,000 in Gross Revenue per Territory, per calendar year, and three (3%) of Gross Revenue for all Gross Revenue for over $2,000,001 per Territory, each calendar year. The minimum royalty due in any calendar month shall be no less than $500 per Territory.

6.9.     Interest on Late Payments

Any payment not received by Executive Care when due will bear interest at ten percent (10%) per year or at the highest rate allowed by applicable law on the date when payment is due, whichever is less[.]

33.     The Morristown Agreement also contains acknowledgments and agreements by Defendants concerning the bases that constitute immediate termination of the franchise

agreement.   Specifically included in this provision is termination on the basis of franchisee abandonment:

> 10.2.1. <u>Immediate Termination upon Notice of Default</u>
>
> Upon the occurrence of any of the following defaults, Executive Care at its option may terminate this Agreement effective immediately upon written notice to you:
>
> (f) If You **abandon the Executive Care Business** or if You cease to operate the Executive Care Business...;
>
> 10.2.2. <u>Termination after Five Days' Notice to Cure</u>
>
> Executive Care, at its option, may terminate this Agreement, effective five (5) days after written notice is given to You, if You fail to make any payment when due under this Agreement or any other agreement between You and Executive Care, an affiliate of Executive Care, a Related Party of Executive Care, or a designee of Executive Care.

34.    The Morristown Agreement further contains acknowledgements and agreements by Defendants concerning Defendants post-termination or expiration rights and obligations. For example, the applicable paragraphs include:

> 10.3.  <u>Rights and Obligations After Termination or Expiration</u>
>
> Upon termination of this Agreement for any reason, the parties will have the following rights and obligations:
>
> *          *          *
>
> (b) You shall...pay Executive Care within thirty (30) days after termination all payments due to Executive Care, and return the Manual and any other property belonging to Executive Care to it, along with a current customer list as of the date of Termination and a current employee list as of the date of Termination.
>
> *          *          *
>
> (i) You may not sell, or in any way divulge, the customer list, employee list, Approved Services, products, approved suppliers, or other confidential and proprietary information of EXECUTIVE CARE YOUR HOME CARE COMPANY™.

35.     In addition to the aforesaid obligations, C. Marshall, M. Marshall and B. Marshall, in their capacity as Executive Care franchisees, are each bound by specific in-term and post-termination covenants and obligations. Specifically, Section 8.6 of the Franchise Agreement provides, in pertinent part:

8.6.     Covenant Not to Compete

You may not, **during the term of this Agreement**, operate or own a beneficial interest in any entity that is competitive with any Executive Care business and that is located within a radius of fifty (50) miles of any Executive Care Business' Office.

You may not, for two (2) years after the Termination of this Agreement, operate or own a beneficial interest in any entity that is competitive with any Executive Care Business and that is located within a radius of ten (10) miles of any Executive Care Business' office and/or your Approved Location.

Entities that are competitive with Executive Care include without limitation any business which offers in-home personal care, in-home companionship, in-home meal preparation, medication reminders, medical and personal scheduling, light in-housekeeping, health consulting, in-home skilled care, in-home registered nurses' services, in home health aid service and/or other or products or services similar to those offered by Executive Care Businesses.

36.     Moreover, the Franchise Agreement contains a "Nondisclosure and Noncompetition Agreement" attached as Exhibit 4 to the Agreement, which contains acknowledgments and agreements by Defendants concerning Defendants obligation in regard to the nondisclosure of trade secrets and confidential information. For example, the applicable paragraphs include:

Section 3. Return of Proprietary Material

Upon termination of franchise ownership by Executive Care or an Executive Care Your Home Care Company® franchise. Confidant shall surrender to Executive Care all material considered proprietary by

Executive Care...Confidant expressly acknowledges that any such materials of any kind given to him or her are and will remain the sole property of Executive Care.

Section 4. <u>Solicitation of Employees</u>

Confidant further agrees that he or she will not furnish to or for the benefit of any competitor of Executive Care, or the competitor's franchisees, or the competitor's subsidiaries, the name of any person who is employed by Executive Care or by any franchisee of Executive Care.

Section 5. <u>Noncompetition</u>

Confidant agrees and covenants that because of the confidential and sensitive nature of the Confidential Information and because the use of the Confidential information in certain circumstances may cause irrevocable damage to Executive Care. **Confidant will not, until the expiration of two (2) years after the termination of the employment relationship...in any Competitive Business...within a radius of fifty (50) miles of any Executive Care Business' Office or location.**

37.     The Morristown Agreement provides that the failure to comply with a material obligation under the Franchise Agreement constitutes a default under the agreement (§10.2.1).

38.     The Morristown Agreement provides for immediate termination of the Morristown Agreement after a written notice (§10.2.1) for certain violations, including franchisee abandonment.

39.     The Morristown Agreement also contains acknowledgments and agreements by Defendants concerning their obligations upon termination of the Agreement. Defendants agreed, among other things, to cease operating as a Executive Care Franchise and to discontinue the use of Executive Care trademarks, trade names and proprietary marks after termination or expiration of the Agreement (§10.3).

**C.     Defendants' Abandonment of Franchise, Unilateral Termination and Breach**

40.     On or about January 19, 2015, Defendants permanently abandoned and ceased operations of the Franchised Business without Executive Care's authorization.

41.     This fact was confirmed on January 22, 2015 when Defendants' Counsel sent correspondence on Defendants' behalf to Executive Care advising that Defendants were unilaterally "terminating their relationship with Executive Home Care and ceasing operations immediately" ("January 22nd Letter").   Exhibit C, Letter from Avram Seagall, Esq. to Robert Tsimberg, Executive Care.

42.     In the January 22nd Letter, Defendants assert that their termination of the agreement was based upon a "decline" in their business and "inability to obtain new business." *See* Exh. C, at p. 1.

43.     Such a suggestion directly contradicts Defendants' representations made to third-parties that their business was flourishing and that their Morristown franchise location achieved gross revenues of nearly $500,000 in the first full year of business (2014).   See Exhibit D, M. Marshall Resume, p. 1.

44.     Approximately eight (8) years remain on the term of the Defendants' Franchise Agreement.   *See* Exh. A, Franchise Agreement.

45.     Furthermore, on or around January 23, 2015, in response to Counsel for Plaintiff, Counsel for the Defendants once again **confirmed**, via e-mail, that the Marshall Defendants are, indeed, purporting to operate their Executive Care franchise location as an independent entity and service the same patients/customers as a new business they have named "Well-Being".  *See* Exhibit E, Jan. 23, 2015 E-Mail correspondence from Avram Seagall, Esq. to Justin M. Klein, Esq.

46.     This competition is particularly troubling since Defendant G. Marshall is an executive with Englewood Medical Center and knows the Execute Care brand well.  The clear purpose to abandon the franchise and directly compete is to unfairly benefit from the access to the brand, client/customer list and proprietary information and materials.

47.     On January 28, 2015, in a good faith effort to swiftly sever the parties' business relationship and to further remind Defendants of their multiple, ongoing restrictive covenants, Plaintiff presented Defendants with a "Mutual Termination and Release Agreement," which included provisions pertaining to Defendants' in-term and post-termination obligations.

48.     On January 29, 2015, once again through their Counsel, Defendants rejected the Mutual Termination Agreement and indicated that they would continue competing with Executive Care by continuing to service at least three (3) Executive Care customers.

49.     As such, Defendants have uncontrovertibly permanently abandoned their Executive Care franchised business for the purpose of operating an independent and competitive in-home care business, in direct contravention of their ongoing contractual obligations.

50.     In addition, Defendants have, to date, failed and refused to pay the royalty fee due and payable that is o Executive Care pursuant to the Franchise Agreement for the month of January 2015, which totals one thousand six hundred and forty-five dollars and sixty-one cents ($1,645.61), plus estimated royalties through the end of the month totaling an additional seven hundred and ninety seven and seven cents ($797.07), for an aggregate total of two thousand four hundred and forty two dollars and sixty-eight cents ($2,442.68).

51.     Defendants have, to date, failed to cure their breach of their payment obligations and this total amount remains due and owing to Plaintiff. Defendants' failure constitutes an

additional breach of the Morristown Agreement and once again demonstrates Defendants' disavowal of and failure to abide by their most basic contractual obligations to Plaintiff.

52.     To date, Defendants have undisputedly abandoned their franchise, having abandoned the business on January 19, 2015 and having twice confirmed their abandonment, unilateral termination and competition with Executive Care. As such, on January 30, 2015, Plaintiff sent Defendants a Notice of Termination and 15-Day Notice ("NOT and 15-Day Notice") consistent with the requirements of the New Jersey Franchise Practices Act (*N.J.F.P.A.*), 56:10-1 *et seq.* *See* Exhibit F, Jan. 30, 2015 NOT and 15-Day Notice.

53.     Despite having received the NOT and 15-Day Notice, which **once again** reiterated all of Defendants' obligations, Defendants persist in their failure to abide by same, have failed to return proprietary business information to Plaintiff and continue to operate their competing business.

54.     Pursuant to the applicable provisions in the Morristown Agreement, Defendants agreed not to compete for a period of two (2) Years within a ten (10) mile radius of their location or any Executive Care Business, not to solicit executive care employees, to return proprietary information. Non-Compete, paras. 3, 4, 5, and 7.

55.     Further, Defendants again acknowledged that violations of this Agreement constitute irreparable harm to Executive Care that is not readily compensable by monetary damages and require injunctive relief.

56.     To date, Defendants, individually and in concert, continue to operate a competing business in direct violation of the Franchise Agreement and Non-Compete Agreement at the Morristown, NJ location and must be enjoined.

57.     Moreover, Defendants continue to possess and have failed and refused to return proprietary and confidential materials to Executive Care, including but not limited to the Executive Care Operations Manual and related proprietary materials.

58.     Furthermore, Defendants also continue to possess the customer list for all customers previously serviced under their Franchise Agreement. Upon information and belief, and based upon representations made thus far by Defendants' Counsel, Defendants each intend to divert Executive Customer business directly from their list of customers, to their new independent in-home care business.

**COUNT I**
**(Declaratory Judgment – Termination of Franchise Agreement and Injunctive Relief)**

59.     The allegations contained paragraphs 1 through 57 are hereby incorporated by reference.

60.     An actual controversy exists between Plaintiff and Defendants and this Court may declare the rights and other legal relations of any party hereto pursuant to 28 U.S.C. § 2201(a).

61.     On February 25, 2013, Plaintiff and Defendants C. Marshall, M. Marshall and B. Marshall entered into a Franchise Agreement, under which all parties had rights and affirmative obligations.

62.     To date, Plaintiff, the franchisor, has duly performed all of the terms and conditions of the Morristown Agreement.

63.     On January 22, 2015, less than two (2) years after executing their Franchise Agreement and approximately eight (8) years prior to the expiration of the term of the Franchise Agreement, Defendants C. Marshall, M. Marshall and B. Marshall advised Plaintiff through their Counsel that they were unilaterally "terminating" their Franchise Agreement and abandoning their Morristown, New Jersey Executive Care franchise location.

14

64.    Such abandoned directly violates Section 10.2.1. of the Franchise Agreement and entitles Plaintiff to terminate the parties' agreement immediately upon written notice.

65.    C. Marshall, M. Marshall and B. Marshall's operation of a competing in-home care business directly violates Section 8.6 (Covenant Not to Compete) of the Franchise Agreement.

66.    C. Marshall, M. Marshall and B. Marshall's conduct also violates the express terms of the "Nondisclosure and Noncompetition Agreement" attached as Exhibit 4 to the Franchise Agreement and signed by each of these defendants.

67.    C. Marshall, M. Marshall and B. Marshall have also failed, to date, to pay royalties due and owing to Plaintiff pursuant to the terms of the parties' franchise agreement, further evincing their failure and refusal to abide by the material terms of the Franchise Agreement.

68.    Once again, on January 23, 2015, Counsel for Defendants confirmed, in writing, that Defendants had ceased operations as an Executive Care franchisee and were operating a competing business they named "Well-Being."

69.    On January 28, 2015, Plaintiff presented Defendants with a Mutual Termination Agreement but Defendants sought to change its material terms and refused to execute the agreement as written.

70.    On January 30, 2015, pursuant to the NJFPA, Plaintiff sent Defendants a NOT and 15-Day Notice, which has, to date, gone unanswered.

71.    To date, Defendants' continue to operate a competitive business in violation of all of the above-stated post-termination obligations.

72.     Plaintiffs have fully complied with the NJFPA, are entitled to a judgment, declaring the Morristown Agreement terminated and enjoining Defendants, their employees, agents, servants or persons acting on their behalf from using Executive Care's trade dress, trade secrets and confidential information.

## COUNT II
### (Breach of Contract – Franchise Agreement)

73.     The allegations of paragraphs 1 through 71 are hereby incorporated by reference.

74.     The conduct described herein constitutes multiple breaches of the contractual obligations and agreements contained in the Morristown Agreement including, but not limited to franchisee abandonment violation of Section 10.2.1 and violations of the Covenant Not to Compete contained in Section 8.6 of the Franchise Agreement.

75.     These breaches constitute good cause for immediately terminating the Morristown Agreement.

76.     As a result of Defendants' actions, Executive Care has suffered and continues to suffer irreparable injury.

## COUNT III
### (Unfair Competition and Violation of Section 43 of the Lanham Act)

77.     The allegations of paragraphs 1 through 75 are hereby incorporated by reference

78.     Defendants' use of Executive Care's trade dress in commerce, outside the scope of the Franchise Agreement, and without the consent of Executive Care is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of their goods, services, or commercial activities by another person. Such unauthorized use of the Executive Care trade dress violates § 43 of the Lanham Act, 15 U.S.C. § 1125(a) and applicable state law.

79.     Defendants' acts were and are being done knowingly and intentionally to cause confusion, or to cause mistake or deceive New Jersey consumers, specifically current customers of Plaintiff who believe that they continue to be served by Plaintiff's franchisees.

80.     As a result of Defendants' actions, Executive Care has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

## COUNT V
### (Trade Dress Infringement)

81.     The allegations of paragraphs 1 through 79 are hereby incorporated by reference.

82.     Executive Care businesses are identified by signs, exterior appearance, certain colors and other items on which the word "Executive Care" appears.

83.     Defendants' use of trade dress that is identical to Executive Care's trade dress, outside the scope of the Franchise Agreement, constitutes a false designation of the origin of Defendants' business, which is likely to cause confusion, or to cause mistake, or to deceive the public as to the affiliation, connection, or association of their store with the Executive Care System. Such adoption of Executive Care's trade dress violates the common law.

84.     Defendants' acts were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive and as a result of Defendants' actions, Executive Care has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that had yet to be determined.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray that this Court:

a.      Temporarily restrain and preliminarily and permanently enjoin each of the named Defendants and all those acting in concert with them from:

i.      continuing to operate an Executive Care franchise location in Morristown, New Jersey, or anywhere else, due to the Defendants' breach of their payment obligations and the in-term and post-termination restrictive covenant contained in the Executive Care Franchise Agreement;

ii.      operating a competing, "independent" in-home care business as a Well-Being Home Care or under any other name for a period of two (2) years within the temporal and geographic restrictions contained in Section 8.6 of the Franchise Agreement in violation of the express provisions of the parties' Franchise Agreement;

iii.      further violating the fair and reasonable non-disclosure, non-competition and/or non-solicitation clauses in the Franchise Agreement and/or in the separate Non-Disclosure and Non-solicitation clauses in the Franchise Agreement and/or in the separate Non-Disclosure and Non-Compete Agreement executed by Defendants; and

(iv)      enjoining Defendants from improperly failing to return or otherwise using the clients, caregivers, charts, phone numbers, proprietary materials, trademarks, trade names, trade dress of Executive Care and from holding themselves out to the public as, and operating as Executive Care franchisees or any entity in any way affiliated with Executive Care in order to divert business from Executive Care to themselves.

b.      Any such other relief as this Court may deem just and proper.

## DESIGNATION OF TRIAL COUNSEL

Justin M. Klein, Esq. is hereby designed as trial counsel for Plaintiff.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury of six (6) as to any and all issues herein to which they may be entitled to a trial by jury.

MARKS & KLEIN, LLP

/s/Louis D. Tambaro
Louis D. Tambaro, Esq.
63 Riverside Avenue
Red Bank, NJ 07701
Attorneys for Plaintiff

Date: February 3, 2015

## VERIFICATION OF LENNY VERKHOGLAZ

I, **Lenny Verkhoglaz,** of full legal age, am the Chief Executive Officer ("CEO") and co-founder of Plaintiff.  I hereby verify that I have reviewed all of the allegations contained in the Verified Complaint and verify the truth of same. If any of the foregoing is willfully false I am subject to punishment.

_____
Lenny Verkhoglaz

February ___, 2015

20