NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| EXECUTIVE HOME CARE FRANCHISING LLC,<br>　　　　　Plaintiff,<br>v.<br><br>MARSHALL HEALTH CORP., WELL-BEING HOME CARE, CORP., CLINT MARSHALL, an individual; and GREER MARSHALL, an individual, JOHN DOES 1-5, fictitious parties,<br><br>　　　　　Defendants. | Civil Action No.: 15-760 (JLL)<br><br>OPINION |

**LINARES,** District Judge.

This matter comes before the Court by way of the application of Plaintiff Executive Home Care Franchising LLC ("Plaintiff")'s Order to Show Cause pursuant to Federal Rule of Civil Procedure 65 and Local Rule of Civil Procedure 65.1 as to why Defendants Marshall Health Corp., Well-Being Home Care, Corp., Clint Marshall, an individual, and Greer Marshall, an individual, (Collectively "Defendants") should not be temporarily and preliminarily enjoined from, *inter alia,* continuing to operate an Executive Care franchise location due to the Marshall Defendants' alleged breach of payment obligations and restrictive covenants contained in the Executive Care Franchise Agreement. The Court has considered the submissions of both parties in support and in opposition to the present application, as well as the arguments presented by the parties at oral argument held on March 5, 2015. Based on the foregoing reasons, Plaintiff's application is denied.

**I. BACKGROUND**

Plaintiff is a New Jersey limited liability company, engaged in the business of selling and granting franchises for the operation of outlets under the trademark EXECUTIVE CARE YOUR HOME CARE COMPANY, for the purpose of operating an in-home care business. (Comp. at ¶¶ 5-6). Plaintiff is the owner of the trademark, service mark, and trade name EXECUTIVE CARE YOUR HOME CARE COMPANYTM, "Executive Care", and related marks which it uses in connection with its franchise services since 2012. (*Id.* at ¶¶ 19-21). Defendant Marshall Health Corp. is a corporation located in New Jersey as well. (*Id.* at ¶ 7). Defendants Clint, Masaree, and Greer Marshall (the "Marshalls") are all residents of New Jersey who run the entity Well-Being Corp. ("Well-Being"), which is also named as a Defendant in this case. (*Id.* at ¶¶ 8-11). Plaintiff alleges that Well-Being is being used by Defendants for the purpose of operating a competing in-home care business to compete directly against the parties' Franchise Agreement.

On February 23, 2013, the Marshalls entered into a Franchise Agreement with Plaintiff to operate an Executive Care in-home care business in Morristown, New Jersey, which opened for business in August 2013. (*Id.* at ¶¶ 29-30). The Franchise Agreement contained acknowledgements and agreement by Defendants concerning the franchisee's duties under the agreement, including: (1) Royalties; (2) Interest on late payments; (3) Immediate termination upon Notice of Default; (4) Termination after five days' notice to cure; (5) Rights and obligations after termination or expiration; (6) Covenant not to compete; and a (6) Non-disclosure and noncompetition agreement, which called for the return of proprietary material in the franchisee's possession, the non-solicitation of employees, and a noncompetition clause after termination of the franchise. (*Id.* at ¶¶ 31-36).

On or about January 19, 2015, Defendants permanently abandoned and ceased operations of the Franchised Business without Plaintiff's authorization. (*Id.* at ¶ 40). On January 22, 2015,

Defendants' counsel sent a letter to Plaintiff indicating that Defendants were unilaterally "terminating their relationship with [Plaintiff] and ceasing operations immediately. (*Id.* at ¶ 41). In Defendants' letter, Defendants state that their termination of the agreement was based upon a "decline" in their business and "inability to obtain new business." (*Id.* at ¶ 42). Plaintiff asserts that Defendants made representations to the contrary by indicating that their Morristown franchise achieved gross revenues of $500,000 in the first full year of business. (*Id.* at ¶ 43). Plaintiff further asserts that on January 23, 2015, counsel for Defendants confirmed that the Marshall Defendants are operating their Executive Care franchise location as an independent entity and are servicing the same patients/customers as a new business that they have named "Well-Being". (*Id.* at ¶ 45). On January 28, 2015, Plaintiff presented Defendants with a "Mutual Termination and Release Agreement," to which Defendants rejected the following day. (*Id.* at ¶¶ 47-48).

Plaintiff alleges that Defendants have failed and refused to pay the royalty fee that is due to Plaintiff pursuant to the Franchise Agreement for the month of January and February 2015, failed to cure their breach of their payment obligations, have abandoned their franchise. (*Id.* at ¶¶ 50-52). Additionally, Plaintiff states that despite Plaintiff sending Defendants a Notice of Termination and 15-Day notice consistent with the New Jersey Franchise Practices Act, Defendants have still failed to return proprietary business information and continue to operate their competing business. (*Id.* at ¶ 52-53). Similarly, Plaintiff contends that pursuant to the Franchise Agreement, Defendants agreed not to compete for a period of two (2) years within a ten (10) mile radius of Plaintiff's location or any Executive Care business, not to solicit employees, and to return proprietary information. (*Id.* at ¶ 54). However, Defendants continue to fail to meet these obligations and continue operate a competing business in direct violation of the

Franchise Agreement. (*Id.* at ¶ 56-58). Plaintiff asserts four Counts against Defendant, including: (1) Declaratory Judgment—Termination of Franchise Agreement and Injunctive Relief; (2) Breach of Contract; (3) Unfair Competition and Violation of §43 of the Lanham Act; and (4) Trade Dress Infringement.

In its Application for temporary restraints and injunctive relief, Plaintiff requested Defendants be enjoined from:

> 1. continuing to operate an Executive Care franchise location in Morristown, New Jersey, or anywhere else due to Marshall Defendants' breach of their payment obligations and the in-term and post-termination restrictive covenant contained in the Executive Franchise Agreement;
>
> 2. Operating a competing, "independent" in-home care business in violation of the express provisions of the parties' franchise agreement;
>
> 3. further violating the fair and reasonable non-disclosure, non-competition, and/or non-solicitation clauses in the Franchise Agreement and/or in separate the Non-disclosure and Non-Compete Agreement executed by Defendants; and,
>
> 4. from improperly failing to return or otherwise using the clients, caregivers, charts, phone numbers, proprietary materials, trademarks, trade names, trade dress of Executive Care and from holding themselves out to the public as, and operating as Executive Care franchisees or any entity in any way affiliated with Executive Care in order to divert business from Executive Care to Defendants.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 65 permits District Courts to grant temporary restraining orders. Fed.R.Civ.P. 65(b). Injunctive relief is an " 'extraordinary remedy' and 'should be granted only in limited circumstances.' " *Kos Pharms. Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir.2004) (quoting *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir.1994)). A court may grant an injunction only if a party shows: "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *Kos Pharms.*, 369 F.3d at 708. A party must produce sufficient evidence of all four factors—and a district court should weigh all four—prior to granting injunctive relief. *Winback*, 42 F.3d at 1427. However, "[a]s a practical matter, if a plaintiff demonstrates both a likelihood of success and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff." *Id.* at 1427, n. 8.

### III. DISCUSSION

In this case, the Court need only analyze the second factor of the preliminary injunction analysis, as Plaintiff has failed to show that it will suffer irreparable harm as a result of Defendant's alleged breach of the Franchise Agreement. In order to demonstrate irreparable harm the plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial. The preliminary injunction must be the only way of protecting the plaintiff from harm. *See e.g., Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312 (1982); *Continental Group, Inc. v. Amoco Chemicals Corp.*, 614 F.2d 351, 356 and n. 9 (3d Cir.1980).

As an initial matter, the Court rejects the contention that the parties have established irreparable harm by agreement to the extent that it is asserted by Plaintiff. Plaintiff argues that

Sec. 11.9 of the Franchise Agreement establishes that irreparable harm will be caused to Plaintiff if Defendants violate their obligations under the Franchise Agreement. This Court has stated that "[a] contractual provision simply cannot act as a substitute for a finding by this Court that determines whether a preliminary injunction is proper." *Laidlaw, Inc. v. Student Transp. of America, Inc.*, 20 F.Supp.2d 727, 758 (D.N.J.1998). As such, while the Court does take the language of the Franchise Agreement into consideration as part of its analysis of irreparable harm, it rejects the contention that such language may substitute for the preliminary injunction analysis to be made by this Court.

Plaintiff next argues that Defendants have caused Plaintiff irreparable harm by unilaterally terminating the Franchise Agreement and disclosing/using Plaintiff's proprietary information as a competitor. Plaintiff cites *Jiffy Lube Int'l, Inc. v. Weiss Bros., Inc.* for the proposition that the good will of a franchisor would be harmed by the existence of a competitor conducting business at the former site used by a franchisee. 834 F. Supp. 683, 692 (D.N.J. 1993) In this case, a quick-lube franchisor brought a motion for preliminary injunction to prevent a franchisee from using its trademarks or violating noncompetition agreement after the Franchisor terminated the franchise agreement for underreported sales figures. In granting the plaintiff's motion, this court held:

> Irreparable injury to the plaintiffs might also result if the restrictive covenants contained in the License and Franchise Agreements are not enforced. As discussed earlier, the purpose of the restrictive covenant in this setting is to protect the goodwill of the franchisor. Were we not to grant a preliminary injunction, the good will of the franchisor would be harmed by the existence of a competing service center at the very site of the former Jiffy Lube center. Since customers are likely to patronize businesses close to home or work, the operation of a second service center, even without the Jiffy Lube logo, would greatly impair plaintiff's ability to establish another franchise in the area.

*Id.* The difference between the cited case and the matter at hand, is that Defendants are not attempting to continue to use the proprietary materials provided to Defendants by Plaintiff, despite Plaintiff's contentions. Nor are Defendants using the same office location, with or without Plaintiff's trademarks. Defendants have certified that on February 20, 2015, Defendants delivered thirteen boxes of documents, stationary, manuals, marketing materials and other items to Plaintiff. (Marshall Cert., ¶ 29). Second, Defendants also certified that they have "worked" with Plaintiff to transfer their business telephone number back to Plaintiff. (Pl. Opp. Br. at 10, 19). Finally, Defendants have certified to the Court that since January 22, 2015, Defendants have not used the office in which its franchise was located, and Plaintiff has taken over the office for its own purposes. (Marshall Cert., ¶ 30). Additionally, Plaintiff offers no facts indicating that Defendant is in fact using any proprietary information or trademarks belonging to Plaintiff.

However, this District, as well as the Third Circuit, have addressed claims of irreparable harm that are factually similar to those made by Plaintiff. In *Huff v. Harmony,* a former employer brought action against former employees, alleging breach of confidentiality agreement, breach of the duty of loyalty, computer fraud, and misappropriation of trade secrets. The employer moved for preliminary injunction, seeking to enjoin former employees from soliciting employer's customers, using or disclosing employer's confidential information, and working in a competing business venture, and seeking return of confidential information. This Court concluded that "irreparable harm exists to the extent that Defendants have retained any Huff Proprietary Information." W.R. Huff Asset Mgm't Co., L.L.C. v. Harmonay, No. 06–5101, slip. op. at 14 (D.N.J. Nov. 27, 2006 LINARES, J). It also concluded that "much, if not all, of the immediate irreparable harm caused by Defendants' breach of their confidentiality agreements was cured pursuant to the Court's [previous] Orders, requiring Appellees to immediately return all Huff

Proprietary Information to Plaintiffs." *Id.* The Court found that there were no trade secrets taken or that could be used by Appellees. The Court specifically ordered that Appellees must return all Huff Proprietary Information and any copies that had been made, and surrender their computers for verification. The Court also enjoined Appellees from entering Huff's business premises, contacting or soliciting any and all current Huff employees, as well as three specific Huff clients. The Court refused to enjoin Appellees from soliciting Huff customers and other entities that do business with Huff, and it refused to enjoin Appellees from working in a competing business venture. The Third Circuit later affirmed this Court's holding. *W.R. Huff Asset Mgmt. Co. v. Harmonay,* 235 F. App'x 41, 43 (3d Cir. 2007).

Additionally, in *Apollo Technologies v. Centrosphere Industrial,* the district court found that irreparable harm had not been established where the defendant's breach resulted in the loss of *existing contracts* and *potential subsequent contracts.* 805 F.Supp. at 1206–11. (Emphasis added). The court concluded that such losses were readily compensable by monetary damages, noting that such damages could be computed based on either the plaintiff's proposed contract amount or the price received by the contract winner. *Id.* at 1209. The court further noted that any loss from potential contracts was "entirely speculative." *Id.* Plaintiff's claims of irreparable harm fail for similar reasons.

Likewise, in *Church of Scientology Int'l v. Elmira Mission of the Church of Scientology,* the Second Circuit held:

> [T]he public interest is especially served by issuing a preliminary injunction against a former licensee as the licensee's status increases the probability of consumer confusion. A licensee or franchisee who once possessed authorization to use the trademarks of its licensor or franchisor becomes associated in the public's mind with the trademark holder. When such party, as defendants here, loses its authorization yet continues to use

the mark, the potential for consumer confusion is greater than in the case of a random infringer. Consumers have already associated some significant source identification with the licensor. In this way the use of a mark by a former licensee confuses and defrauds the public.

794 F.2d 38, 44 (2d Cir. 1986). While this analysis is well taken, it is different than the facts of the case at hand. Defendants in this case have represented to the Court that they are no longer using Plaintiff's trademarks in their new business. Moreover, Defendants have represented to the Court that all of their existing clients have be expressly informed that Defendants are no longer, in any way, associated with Plaintiff and have provided said customers with a document expressing this notion. (Transcript of Proceedings, March 16, 2015, 40:7-42:10). Therefore, based upon Defendants representations, the Court is satisfied that Defendants are no longer using nor creating a potential for confusion regarding Plaintiff's trademarks.

The value of the business lost is readily ascertainable through discovery should this matter reach that stage of litigation. Moreover, Defendants have certified that it has returned all proprietary information to Plaintiff and Plaintiff has taken over Defendants' former franchise location. (Marshall Cert. ¶ 29-30). Without the information at issue in Defendants' possession, the Court finds that Plaintiff has failed to demonstrate that Plaintiff has caused irreparable harm that cannot be remedied monetarily. All of the required elements for a preliminary injunction to be issued by this Court have not been satisfied. Therefore, Plaintiff's application is denied.

## IV. CONCLUSION

For the reasons herein expressed, Plaintiff's application is denied. An appropriate Order accompanies this Opinion.

DATE: March 26, 2015

/s/ Jose L. Linares
Jose L. Linares
United States District Judge